**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| JAMES SETTLEMENT SERVICES INTERNATIONAL, LLC, | ) ) | |
| Plaintiff, | ) | |
| vs. | ) | Civil Action File No.: |
| CONESTOGA TRUST SERVICES, LLC, | ) ) | 1:17-cv-04680-CAP |
| Intervenor Plaintiff, | ) | |
| vs. | ) | |
| EUGENE E. HOUCHINS, III,  et al., | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' RESPONSES TO PLAINTIFF JAMES SETTLEMENT SERVICES INTERNATIONAL, LLC'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Rule 56.1, Defendants Eugene E. Houchins, III, Eugene E. Houchins, Jr., Bonded Life Fund, LLC, and American Life Fund Corp. (collectively, "Defendants") hereby respond to the Statement of Undisputed Material Facts filed by Plaintiff James Settlement Services International, LLC ("JSSI") at ECF #89-9 as follows:

### 1.

A life settlement is a transaction whereby the owner of a life insurance policy sells the life insurance policy to a third-party for an amount greater than the policy's

82121133v.2

cash surrender value but less than its face value benefit. (Complaint [Doc. No. 1] at 4 ¶ 8; Answers [Doc. No. 9 & Doc. No. 10] at 3 ¶ 8.)

**RESPONSE**: Defendants object that the asserted fact does not conform to the requirements of LR 56.1(B)(1)(b) and (c) in that it is solely a citation to pleadings and is not supported by competent summary judgment evidence and to the extent it represents a legal conclusion.  The term "life settlement" is a defined term under the Georgia Life Settlements Act.  Defendants further object that this purported fact, as stated, is immaterial to the summary judgment issues before this Court, as the statute and statutory definitions are controlling.

2.

A life settlement broker is a person who, for a fee, commission, or other valuable consideration, offers or attempts to negotiate a life settlement contract between an owner and the purchaser. (Complaint [Doc. No. 1] at 4 ¶ 9; Answers [Doc. No. 9 & Doc. No. 10] at 3 ¶ 9.)

**RESPONSE**: Defendants object that the asserted fact does not conform to the requirements of LR 56.1(B)(1) (b) and (c) in that it is solely a citation to pleadings and is not supported by competent summary judgment evidence and to the extent it represents a legal conclusion.  The terms "broker" and "life settlement broker" are defined terms under the Georgia Life Settlement Act and related insurance statutes.

2

Defendants further object that this purported fact, as stated, is immaterial to the summary judgment issues before this Court, as the Georgia statutes and statutory definitions are controlling.

3.

James Settlement is a company who operates in the life settlement industry and purchases and sells life insurance policies via life settlements. (Exh. 1, 7/19/19 James Depo. at 13.) Ronald James ("James") is the sole member of James Settlement, and his residence and James Settlement's office are in California. (Exh. 1, 7/19/19 James Depo. at 10-11.)

**RESPONSE**: Admitted in part. Disputed in part. Defendants do not dispute that James is the sole member of James Settlement or that James Settlement is a company who operates in the life settlement industry and purchases and sells life insurance policies via life settlements. Defendants object that the proffered evidence does not support the asserted fact that James's residence and James Settlement's office are in California. Defendants also object that this purported fact is not material to the summary judgment issues involving Defendants.

4.

During the relevant time period, Defendants Eugene E. Houchins, III ("Houchins, III") and Eugene E. Houchins, Jr. ("Houchins, Jr.") were insurance

82121133v.2

brokers and life settlement brokers. (Exh. 2, Houchins, III Depo. at 386-87; Complaint [Doc. No. 1] at 4 ¶ 7; Answers [Doc. No. 9 & Doc. No. 10] at 3 ¶ 7.)

**RESPONSE**:  Disputed as stated. "Relevant time period" is not stated as a fact or precisely defined such that it can be admitted or denied.  Defendants also object that the proffered deposition testimony does not support the asserted facts. Defendants further object that the asserted fact does not conform to the requirements of LR 56.1(B)(1)(b) and (c) in that it contains a citation to pleadings and to the extent it represents a legal conclusion.

5.

Houchins, III was the sole owner, managing member and president of Defendant Bonded Life Fund Corp. ("Bonded Life"). (Exh. 6, Corporate Defendants' Depo. at 154-156.) Houchins, III is the sole owner and president of American Life Fund Corp. ("American Life"). (Exh. 2, Houchins, III Depo. at 331; Exh. 6, Corporate Defendants' Depo. at 155-156.) At all relevant times, Houchins, III controlled the operations of Bonded Life and American Life. (Exh. 2, Houchins, III Depo. at 7, 8, 34, 330-33; Exh. 6, Corporate Defendants' Depo. at 154-156; Complaint [Doc. No. 1] at 4 ¶ 7; Answers [Doc. No. 9 & Doc. No. 10] at 3 ¶ 7.)

**RESPONSE**:  Admitted in part. Disputed in part.  Defendants object that any reference to Bonded Life Fund Corp. is not supported by the proffered evidence or

any other competent summary judgment evidence.  Bonded Life Fund Corp. does not exist and is not a named defendant in this case. Defendants object that the citations to the pleadings do not conform to the requirements of LR 56.1(B)(1)(b). Defendants admit Houchins III was the president, sole owner, and member of Bonded Life Fund, LLC ("BLF") and that Houchins III was the sole owner and president of American Life Fund Corp.

6.

A stranger originated life insurance ("STOLI") policy, which is also known as a manufactured policy, is a life insurance policy obtained for the purpose of selling it in a life settlement transaction. (Exh. 1, 7/19/19 James Depo. at 32, 36.) It is a policy initiated by someone without an insurable interest in the life of the insured. (Exh. 4, 8/20/19 McDermott Depo. at 56.) A typical STOLI program involves someone recruiting elderly people to apply for life insurance with the initial premiums being paid by someone else and the policy being sold to an investor shortly after issuance. (Exh. 1, 7/19/19 James Depo. at 36.) STOLI policies are illegal in most states. (Exh. 1, 7/19/19 James Depo. at 36.)

**RESPONSE**: Defendants do not dispute that STOLIs are also known as manufactured policies.  Defendants dispute the remainder of the asserted facts as stated.  Defendants object to the proffered definition of a STOLI policy as "a policy

initiated by someone without an insurable interest in the life of the insured," as an impermissible legal conclusion.  Defendants acknowledge that in some states include life insurance policies initiated by someone without an insurable interest in the life of the insured may constitute a STOLI policy, but such a broad, general definition has no application in this case.  Whether a policy is a STOLI policy is dependent upon individual state laws concerning life insurance, insurable interests, and various other factors as provided in each respective state's statutes.  Defendants object that James's self-serving testimony regarding a "typical STOLI program" and his opinions concerning the legality of STOLI policies is argumentative and asserts impermissible legal conclusions.

## 7.

In April 2008, Sun Life Assurance Company of Canada ("Sun Life") issued a policy on the life of Erwin Collins ("Collins Policy"). (Answer [Docs. No. 9] at 9 ¶ 25.) The Collins Policy had a $2,000,000 death benefit. (*Id.*)

**RESPONSE**:  Admitted.

## 8.

Houchins, III, Bonded Life Company, LLC, another company controlled and operated by Houchins, III, and Houchins, Jr. assisted Erwin Collins ("Collins") in applying for and obtaining the Collins Policy. (Exh. 2, Houchins, III Depo. at 19-

139-148, 341-357, Exhs. 3, 8, 12, 16, 45, 47, 48.) The Erwin A. Collins Irrevocable Life Insurance Trust – 2008 ("Trust") owned the Collins Policy at the time it was issued. (Exh. 2, Houchins, III Depo. at 182-83, Exh. 15; Exh. 6, Corporate Defendants' Depo. at 79.)

**RESPONSE**: Disputed in part.  Defendants do not dispute that Houchins, III, Bonded Life Company, LLC, another company controlled and operated by Houchins, III, and Houchins, Jr. assisted Erwin Collins ("Collins") in applying for and obtaining the Collins Policy. Defendants object that the proffered deposition testimony and exhibits do not support the asserted facts.

9.

After its issuance, the ownership of the Collins Policy was transferred on a number of occasions via life settlements. (Exh. 2, Houchins, III Depo. at 190, 197-199, 266, 272, 276-78, Exh. 27.) Shortly after the policy was issued, a beneficial interest in the Trust was sold to an entity known as Life Asset G. (Exh. 2, Houchins, III Depo. at 190, 197-199, 266, 272, Exh. 27; Exh. 6, Corporate Defendants' Depo. at 207-209.) Houchins, III facilitated this transaction, and one of his companies received broker compensation. (*Id.*)

**RESPONSE**: Admitted in part; disputed in part.  Defendants do not dispute that the ownership of the Collins Policy was transferred on a number of occasions.

82121133v.2

Defendants object to JSSI's description that all of the transfers were "life settlements," to the extent it is argumentative and asserts impermissible legal conclusions, because a "life settlement" is a defined term under the Georgia Life Settlements Act.  Defendants do not dispute the remaining asserted facts.

10.

In 2012, after the ownership of the policy had been transferred several times, a purported trust known as the Erwin A. Collins Irrevocable Life Insurance Trust ("2007 Trust") obtained ownership of the Collins Policy. (Exh. 2, Houchins, III Depo. at 274-278, Exh. 31.) Houchins, III facilitated this transaction. (Exh. 2, Houchins, III Depo. at 274-75.)

**RESPONSE**: Disputed as stated.  Defendants object to JSSI's description of the 2007 Trust as "purported," as it is not supported by the proffered evidence and argumentative.  Defendants admit that Houchins III was involved in the transaction, but object that the characterization by JSSI is not an accurate reflection of the cited testimony.  Defendants object that the asserted facts are not material to the summary judgment issues involving Defendants.

11.

After the 2007 Trust acquired the Collins Policy, Houchins, III began soliciting potential purchasers for the policy. (Exh. 2, Houchins, III Depo. at 297;

299-300.) In 2012, Collins Missouri, LLC purchased the Collins Policy from the 2007 Trust via a life settlement. (Exh. 2, Houchins, III Depo. at 275-278, 298.) Houchins, III was the broker who facilitated this transaction, and Houchins, III or one of the companies he controlled received compensation. (Exh. 2, Houchins, III Depo. at 297-303; Exh. 6, Corporate Defendants' Depo. at 211-212.)

**RESPONSE**: Defendants object to JSSI's description of the sale of the Collins Policy to Collins Missouri, LLC as a "life settlement," as it is argumentative, not supported by the proffered evidence, and an impermissible legal conclusion. Defendants object to JSSI's description of Houchins, III as a "broker," as it is not supported by the proffered evidence, argumentative, and an impermissible legal conclusion.  Defendants do not dispute the remaining asserted facts.

12.

In 2010, Michael McDermott ("McDermott") formed Intervenor Plaintiff/Crossclaim Plaintiff Conestoga Trust Services, LLC ("Conestoga") and certain related companies to obtain life insurance policies via life settlements and sell interests in such policies to investors. (Exh. 4, 8/20/19 McDermott Depo. at 18, 28-34.) McDermott formed a trust named the Conestoga Settlement Trust ("Conestoga Trust") to hold the policies. (Exh. 4, 8/20/19 McDermott Depo. at 29.)

**RESPONSE**: Defendants do not dispute the asserted facts.  Defendants object

82121133v.2

that the asserted facts are not material to the summary judgment issues involving Defendants.

13.

McDermott would recommend the purchase of a policy to the Conestoga Trust. (Exh. 5, 10/16/19 McDermott Depo. at 12-13.) Hector De Leon, an attorney, and his law firm De Leon & Washburn acted as the Trustee of the Conestoga Trust, had the final authority to decide what policies the Conestoga Trust would purchase, and would make the decision on whether the Conestoga Trust would purchase a policy. (Exh. 5, 10/16/19 McDermott Depo. at 11-12, Exh. 8.)

**RESPONSE**: Defendants do not dispute the asserted facts.  Defendants object that the asserted facts are not material to the summary judgment issues involving Defendants.

14.

In 2010, McDermott had discussions with James about James Settlement presenting polices to Conestoga for potential purchase by the Conestoga Trust. (Exh. 4, 8/20/19 McDermott Depo. at 61-62.) During these discussions, there were discussions about the types of policies Conestoga wanted to purchase. (Exh. 1, 7/19/19 James Depo. at 49-50; Exh. 4, 8/20/19 McDermott Depo. at 67.)

**RESPONSE**: Defendants do not dispute the asserted facts.  Defendants object

that the asserted facts are not material to the summary judgment issues involving Defendants.

15.

McDermott claims that in 2010, he told James that he did not want any STOLI policies. (Exh. 5, 10/16/19 McDermott Depo. at 16-17.) McDermott claims that during these discussions James told him that James Settlement would do the due diligence related to the policies, James Settlement would not sell a STOLI policy to Conestoga, and Conestoga should not worry about it. (Exh. 5, 10/16/19 McDermott Depo. at 24, 36.)

**RESPONSE**: Defendants do not dispute that McDermott testified to the asserted statements. Defendants object that the statements as inadmissible hearsay to the extent they are offered for the truth of the matter asserted and, therefore, they do not constitute admissible summary judgment evidence. Defendants object that the asserted facts are not material to the summary judgment issues involving Defendants.

16.

James Settlement wanted to avoid STOLI policies. (Exh. 1, 7/19/19 James Depo. at 55.) Among other things, it bought policies for its own benefit. (Exh. 1, 7/19/19 James Depo. at 67.)

**RESPONSE**: Defendants do not dispute that James testified to the asserted statements.  Defendants object that the statements as inadmissible hearsay to the extent they are offered for the truth of the matter asserted and, therefore, they do not constitute admissible summary judgment evidence.  Defendants further object that the asserted facts are not material to the summary judgment issues involving Defendants.

17.

James had lots of conversations with McDermott. (Exh. 1, 7/19/19 James Depo. at 58.) In 2010, James Settlement had communications with Conestoga about the manner in which James Settlement screened policies. James does not recall any specific conversations with McDermott about James Settlement doing due diligence to determine whether a policy was a STOLI policy or involved premium financing (*i.e.*, providing a loan to an insured to pay premiums) but is sure conversations took place. (Exh. 1, 7/19/19 James Depo. at 55, 57.) STOLI policies and due diligence probably came up but there was not a string of conversations about it. (Exh. 1, 7/19/19 James Depo. at 55, 57.) It was not necessary to have such conversations about STOLIs as it was more of understanding that due diligence would be conducted in an attempt to avoid STOLI policies. (Exh. 1, 7/19/19 James Depo. at

61.) This was the understanding of everyone in the entire business. (Exh. 1, 7/19/19 James Depo. at 61-62.)

**RESPONSE**: Defendants do not dispute that James testified to the asserted statements.  Defendants object that certain statements are inadmissible hearsay to the extent they are offered for the truth of the matter asserted and, therefore, they do not constitute admissible summary judgment evidence.  Defendants also object that the asserted facts that do not conform to the requirements of LR 56.1(B)(1) and are not supported by citations to competent summary judgment evidence.  Defendants object that the asserted facts are not material to the summary judgment issues involving Defendants.

### 18.

James Settlement would not knowingly purchase STOLI policies, wet ink policies (policies that had been recently issued) or risky policies which involved the sale of a beneficial interest or premium financing. (Exh. 3, 10/17/19 James Depo. at 267, 312-13.) James Settlement, however, never made a "blanket guarantee" that all policies it presented to Conestoga would not be STOLI policies. (Exh. 1, 7/19/19 James Depo. at 53.) As James explained, if someone wanted to conceal that a policy was obtained illegally, that person could do it. (Exh. 1, 7/19/19 James Depo. at 36-37.)

82121133v.2

**RESPONSE**: Defendants do not dispute that James testified to the asserted statements.  Defendants object that the statements as inadmissible hearsay to the extent they are offered for the truth of the matter asserted.  Defendants further object to the extent that the preferred statements are offered as a legal conclusion.  Additionally, Defendants object that the asserted facts are not material to the summary judgment issues involving Defendants.

19.

There was never any written agreement obligating James Settlement to perform due diligence, setting forth any specific due diligence James Settlement was required to perform, guaranteeing no STOLI policies would be presented to Conestoga, or representing all policies offered by James Settlement would be valid. (Exh. 1, 7/19/19 James Depo. at 53; Exh. 5, 10/16/19 McDermott Depo. at 104, Exh. 8.)

**RESPONSE**: Defendants do not dispute the asserted facts.  Defendants object that the asserted facts are not material to the summary judgment issues involving Defendants.

20.

Conestoga certainly understood the risks related to STOLI policies. (Exh. 5, 10/16/19 McDermott Depo. at 55, 156, 205-206, Exh. 24.) To obtain investors,

14

Conestoga prepared and distributed a Private Placement Memorandum ("PPM"). (Exh. 5, 10/16/19 McDermott Depo. at 196, Exh. 24.) Although it identified a number of entities as strategic partners including De Leon & Washburn, the PPM does not identify James Settlement. (Exh. 5, 10/16/19 McDermott Depo. at 197-198, 204, Exh. 24.) The PPM also does not represent or warrant that the polices purchased by Conestoga would not be STOLI policies. (Exh. 5, 10/16/19 McDermott Depo. at 198, 200, Exh. 24.) Rather, in the PPM, Conestoga identified STOLI policies as a risk. (Exh. 5, 10/16/19 McDermott Depo. at 205-06, Exh. 24.)

**RESPONSE**: Admitted.

### 21.

Conestoga and the Conestoga Trust were not obligated to purchase all the policies James Settlement offered to them. (Exh. 5, 10/16/19 McDermott Depo. at 50.) Conestoga could reject any policy offered by James Settlement. (Exh. 3 10/17/19 James Depo. at 363; Exh. 5, 10/16/19 McDermott Depo. at 50.)

**RESPONSE**: Admitted.

### 22.

James Settlement was not obligated to sell any policies to the Conestoga Trust or Conestoga. (Exh. 5, 10/16/19 McDermott Depo. at 50.)

**RESPONSE**: Admitted.

82121133v.2

23.

From 2010 to 2015, James Settlement submitted to McDermott and Conestoga information about policies for potential purchase by the Conestoga Trust. McDermott rejected numerous policies presented to him by James Settlement. (Exh. 1, 7/19/19 James Depo. at 73; Exh. 3, 10/17/19 James Depo. at 363; Exh. 5, 10/16/19 McDermott Depo. at 50.)

**RESPONSE**: Defendants do not dispute the asserted facts. Defendants object to the asserted facts that do not conform to the requirements of LR 56.1(B)(1) and are not supported by citations to competent summary judgment evidence. Defendants further object that the asserted facts are not material to the summary judgment issues involving Defendants.

24.

Based on McDermott's and Conestoga's recommendations, the Conestoga Trust purchased 54 policies via life settlements from James Settlement. (Exh. 4, 8/20/19 McDermott Depo. at 59.)

**RESPONSE**: Defendants do not dispute the asserted facts. Defendants object that the asserted facts are not material to the summary judgment issues involving Defendants.

16

25.

For each policy it purchased, the Conestoga Trust would enter into a separate written agreement with James Settlement. (Exh. 1, 7/19/19 James Depo. at 44; Exh. 5, 10/16/19 McDermott Depo. at 43, Exh. 8.)

**RESPONSE**: Defendants do not dispute the asserted facts.  Defendants object that the asserted facts are not material to the summary judgment issues involving Defendants.

26.

In September 2012, Houchins, III approached James Settlement about purchasing the Collins policy via a life settlement. (Exh. 1, 7/19/19 James Depo. 27-28, 64, 67, 139; Exh. 3, 10/17/19 James Depo. at 337-38.)  Houchins, III and Bonded Life provide documents, including a copy of the policy, and information from which James Settlement decided to purchase the policy and offer the policy to Conestoga. (Exh. 3, 10/17/19 James Depo. at 337-38; Exh. 2, Houchins, III Depo. at 297-300; Exh. 6, Corporate Defendants' Depo. at 212-216, Exh. 50; Answer [Doc. No. 9] at 11 ¶ 30.)

**RESPONSE**: Defendants object to JSSI's description of the sale of the Collins Policy to JSSI as a "life settlement," as it is argumentative, not supported by the proffered evidence, and an impermissible legal conclusion.  Defendants further

object to the citations that do not conform to the requirements of LR 56.1(B)(1). Defendants do not dispute the remaining asserted facts.

27.

In April 2013, James Settlement entered into an agreement with Collins Missouri, LLC to purchase the Collins Policy. (Exh. 3, 10/17/19 James Depo. at 273-74, Exh. 3.) As part of this transaction, Houchins, III acted as the broker, and at his direction, James Settlement paid the related broker commission to Bonded Life. (Exh. 1, 7/19/19 James Depo. at 27-28; Exh. 2, Houchins, III Depo. at 293.)

**RESPONSE**: Defendants object to JSSI's description of Houchins, III's position for the sale of the Collins Policy to JSSI as a "broker" and the payment as a "broker commission," as they are argumentative, not supported by the proffered evidence, and impermissible legal conclusions.  Defendants do not dispute the remaining asserted facts.

28.

On or around April 30, 2013, James Settlement and the Conestoga Trust entered into a written agreement entitled "Policy Purchase Agreement" whereby the Conestoga Trust purchased the Collins Policy from James Settlement. (Exh. 5, 10/16/19 McDermott Depo. at 43, Exh. 8; Exh. 7 Policy Purchase Agreement.)

**RESPONSE**: Admitted.

29.

The Policy Purchase Agreement provides:

> This written Agreement constitutes the entire agreement between the Parties hereto with respect to the subject matter hereof and supersedes any prior written or oral understanding between the Parties with the respect to the subject matter hereof.

(Exh. 5, 10/16/19 McDermott Depo., Exh. 8; Exh. 7 Policy Purchase Agreement, Provision 2.04.)

**RESPONSE**: Admitted.

30.

The Policy Purchase Agreement does not contain any representations, warranties or guarantees by James Settlement related to the Collins Policy. (Exh. 5, 10/16/19 McDermott Depo., Exh. 8; Exh. 7 Policy Purchase Agreement.) The Policy Purchase Agreement does not contain any terms or conditions about STOLI policies or due diligence. (Exh. 5, 10/16/19 McDermott Depo., Exh. 8; Exh. 7 Policy Purchase Agreement.)

**RESPONSE**: Defendants do not dispute the asserted fact, but state that the Policy Purchase Agreement itself is the best evidence of its contents. Defendants deny any assertions inconsistent with the Policy Purchase Agreement.

31.

Hector De Leon entered into the Policy Purchase Agreement on behalf the Conestoga Trust. (Exh. 5, 10/16/19 McDermott Depo. at 44, Exh. 8.) Mr. De Leon had full authority to enter into the agreement. (Exh. 5, 10/16/19 McDermott Depo. at 51-53.) Conestoga could not identify the information Mr. De Leon relied upon in deciding to enter into the Policy Purchase Agreement. (Exh. 5, 10/16/19 McDermott Depo. at 51-53.)

**RESPONSE**: Admitted.

32.

On June 19, 2014, Collins passed away. (Complaint [Doc. No. 1] at 12 ¶ 36; Answer [Doc. No. 9] at 14 ¶ 36; Answer [Doc. No. 10] at 10 ¶ 36.) On August 13, 2014, Conestoga submitted a claim to Sun Life requesting payment of the $2,000,000 death benefit. (Complaint [Doc. No. 1] at 12 ¶ 36; Answer [Doc. ¶ No. 9] at 14 ¶ 36.)

**RESPONSE**: Defendants do not dispute the asserted facts.  Defendants object that the asserted facts do not conform to the requirements of LR 56.1(B)(1) and are not supported by competent summary judgment evidence.  Defendants further object that the purported facts are not material to the summary judgment issues involving Defendants.

33.

On or about November 14, 2014, Sun Life filed an action against Conestoga

styled *Sun Life Assurance Company of Canada v. Conestoga Trust Services, LLC*,

United States District Court, Eastern District of Tennessee, Knoxville Division, No.

3:14-cv-00534 ("Sun Life case"), seeking a declaration that the policy was void

because it was an illegal STOLI. (Complaint [Doc. No. 1] at 12 ¶ 39; Answer [Doc.

No. 9] at 15 ¶ 39; Answer [Doc. No. 10] at 11 ¶ 39.)

**RESPONSE**: Defendants do not dispute the asserted fact, but state that the

referenced Complaint itself is the best evidence of its contents.  Defendants deny

any assertions inconsistent with the Complaint.  Defendants also object that the

asserted facts do not conform to the requirements of LR 56.1(B)(1) and are not

supported by competent summary judgment evidence.

34.

At his deposition in the Sun Life case, Houchins, III exercised his right against

self-incrimination under the Fifth Amendment of the Constitution of the United

States and refused to answer questions. (Exh. 1, 7/19/19 James Depo. at 109-110;

Exh. 2, Houchins, III Depo. at 325, Exh. 6, Corporate Defendants' Depo. at 148,

206.)

**RESPONSE**: Defendants do not dispute the asserted facts.  Defendants object

that the purported facts are not material to the summary judgment issues involving Defendants.

35.

On July 12, 2017, the court in the Sun Life case entered an Order granting summary judgment in favor of Sun Life. The court in the Sun Life case found that Houchins, III designed and participated in an illegal wagering scheme to procure the Collins Policy, held that the Collins Policy was a STOLI policy and declared that the policy was void *ab initio*. (Complaint [Doc. No. 1] at 13 ¶ 41, Exh. A; Answer [Doc. No. 9] at 16 ¶ 41; Answer [Doc. No. 10] at 11 ¶ 41; *Sun Life Assurance Co. of Can. v. Conestoga Trust Servs., LLC*, 263 F.Supp.3d 695 (E.D. Tenn. 2017).) On April 3, 2018, the United States Court of Appeals for the Sixth Circuit affirmed this ruling.

**RESPONSE**: Defendants object to the asserted facts that do not conform to the requirements of LR 56.1(B)(1) and are not supported by competent summary judgment evidence. Defendants do not dispute the Eastern District of Tennessee and Sixth Circuit entered orders in the Sun Life Lawsuit, but state that each court opinions is the best evidence of its contents. Defendants deny any assertions inconsistent with the court opinions.

Respectfully submitted this 24th day of January, 2020.

**LOCKE LORD LLP**

*/s/Elizabeth J. Campbell*

Elizabeth J. Campbell

Georgia Bar No. 349249

*ecampbell@lockelord.com*

Talis C. Trevino

Georgia Bar No. 181896

*talis.trevino@lockelord.com*

Terminus 200, Suite 1200

3333 Piedmont Road NE

Atlanta, GA  30305

(404) 870-4600 - Telephone

(404) 806-5679 – Facsimile

*Attorneys for Defendants*

## **CERTIFICATION OF COMPLIANCE**

I hereby certify that the foregoing **RESPONSES TO PLAINTIFF JAMES SETTLEMENT SERVICES INTERNATIONAL, LLC'S STATEMENT OF UNDISPUTED MATERIAL FACTS** has been prepared in Times New Roman, 14-point font, in conformance with Local Rule 5.1C.

*/s/ Elizabeth J. Campbell*
Elizabeth J. Campbell, Esq.

82121133v.2

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **DEFENDANTS'
RESPONSES TO PLAINTIFF JAMES SETTLEMENT SERVICES
INTERNATIONAL, LLC'S STATEMENT OF UNDISPUTED MATERIAL
FACTS** with the Clerk of Court using the CM/ECF system, which will automatically
send notice of its filing to the following attorneys of record:

Joseph C. Sharp, Esq.
Matthew Scott Knoop, Esq.
**POLSINELLI, P.C.**
Suite 1100
1201 West Peachtree Street, NW
Atlanta, GA  30309

*Counsel for Plaintiff James Settlement
Services International, LLC*

James C. Orr, Jr., Esq.
**HEYGOOD, ORR & PEARSON**
2nd Floor
2331 W. Northwest Hwy.
Dallas, TX 75220

Kimberly A. Worth, Esq.
**THRASHER WORTH, LLC**
Five Concourse Parkway
Suite 3200
Atlanta, GA  30328

*Counsel for Intervenor Plaintiff
Conestoga Trust Services, LLC*

Dated: January 24, 2020.

**LOCKE LORD LLP**

*/s/Elizabeth J. Campbell*
Elizabeth J. Campbell, Esq.
Georgia Bar No. 349249

82121133v.2