**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **JAMES SETTLEMENT SERVICES INTERNATIONAL, LLC,** | |
| **Plaintiff / Crossclaim Defendant,** | **CASE ACTION NO.** |
| **v.** | **1:17-CV-04680-CAP** |
| **CONESTOGA TRUST SERVICES, LLC,** | |
| **Intervenor Plaintiff / Crossclaim Plaintiff,** | |
| **EUGENE E. HOUCHINS, III, EUGENE E. HOUCHINS, JR., BONDED LIFE FUND, LLC AND AMERICAN LIFE FUND CORP.,** | |
| **Defendants.** | |

**<u>PLAINTIFF JAMES SETTLEMENT SERVICES INTERNATIONAL,
LLC'S RESPONSES TO DEFENDANTS' STATEMENT OF UNDISPUTED
MATERIAL FACTS IN SUPPORT OF THEIR AMENDED &
CONSOLIDATED MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff/Crossclaim Defendant James Settlement Services International,
LLC ("Plaintiff" or "James Settlement") hereby submits the following responses to
Defendants Eugene E. Houchins, III, Eugene E. Houchins, Jr., and Bonded Life
Fund, LLC's (collectively, "Defendants") Statement of Undisputed Material Facts

in Support of Their Amended and Consolidated Motion for Summary Judgment:

1.

**Defendants' Fact:**   Sun Life issued Policy No. 020160863 for the life of Erwin Collins with an effective date of March 13, 2008 and policy amount of $2,000,000.00 ("Collins Policy"). (Houchins Depo. at Ex. A, pp. 184:15-185:1, and Ex. B.)

**Response:**   Not disputed.

2.

**Defendants' Fact:**   The Collins Policy included the application, which identified Collins as a Tennessee resident. (Houchins Depo. at Ex. A, pp. 184:15-185:1; Ex. B.)

**Response:**   James Settlement does not dispute that the Collins Policy as issued by Sun Life included an application which reflected that Collins was a resident of Tennessee.

3.

**Defendants' Fact:**   Non-Party Bonded Life Company ("BLC") financed Collins' payment of his initial premium, as evidenced by the Conditional Promissory Note executed by Collins. (Houchins Depo. at Ex. A, pp. 152:13-21, and Ex. C.)

**Response:**   Houchins, III used BLC funds to obtain cashier's checks to pay the initial premium. According to Houchins, III, he obtained a copy of  the purported Conditional Promissory Note after this case was filed from Ann Collins, i.e., it was not in the files maintained by Houchins, III or any of the other Defendants.  (Exh. A, Houchins, III Depo. at 149-153.)[1]  There is no evidence that this document was produced in the Sun Life case.   Given Houchins, III's propensity to falsify documents, there are serious questions as to the authenticity of the purported Conditional Promissory Note.   In any event, James Settlement does not dispute that Houchins, III and BLC paid the initial premium and this was some type of premium financing.

4.

**Defendants' Fact:**     On June 9, 2008, the owner of the Collins Policy—the Erwin A. Collins Irrevocable Life Insurance Trust—sold its beneficial interest to Life Asset G.  (Houchins Depo. at Ex. A, pp. 266:6-14; Ex. D.)

**Response:**  Not disputed.

5.

**Defendants' Fact:**     On or about April 3, 2013, Collins Missouri, LLC

---

[1]  Exhibits A-D are attached hereto, and consist of deposition excerpts not previously filed in the record.  James Settlement citations to numerical Exhibits (e.g., Exh. 1) are to the exhibits attached to James Settlement's Response in Opposition to American Life's Motion for Summary Judgment [Dkt. 105].

sold the Collins Policy to JSSI for $200,000.00, as evidenced by the Life Insurance Policy Purchase Agreement executed by the parties ("JSSI Purchase Agreement"). (James Depo. at Ex. E, pp. 83:11-24, and Ex. F.)

**Response:**  Not disputed.

6.

**Defendants' Fact:**  James Settlement is a sophisticated company that has long operated in the life settlement industry, buying and selling life insurance policies for a profit.  (Compl. at ECF 1, ¶ 39.)

**Response:**  Disputed; the citation does not support the purported fact.  In the Complaint at ¶ 29, James Settlement states "James Settlement is a company who operates in the life settlement industry and purchases and sells life insurance policies via life settlements."  James Settlement is a small company owned by Ron James who during the relevant period of time, operated the business with one other individual, and therefore is not sophisticated in comparison to large companies with significant resources.  (Exh. B, 7/19/19 James Depo. at 8-11.)

7.

**Defendants' Fact:**  Bonded Life Fund, LLC ("BLF") was paid $7,000.00 for its role in the sale of the Collins Policy from Collins Missouri, LLC to JSSI. (Houchins Depo. at Ex. A, pp. 293:21-25.)

4

**Response:**   James Settlement disputes the characterization of BLC's role in the transaction.   Houchins, III and BLF acted as the broker, and James Settlement paid the related broker commission to BLF.   (Exh. 1, 7/19/19 James Depo. at 27-28; Exh. 2, Houchins, III Depo. at 293; Exh. 6, Corporate Defendants' Depo. at 219.)

8.

**Defendants' Fact:**   Defendants did not know JSSI had plans or intention to re-sell the Collins Policy to Conestoga and had never heard of Conestoga before November 2014.   (Houchins Depo. at Ex. A, pp. 280:15-282:19.)

**Response:**   Disputed.   Houchins, III knew that James Settlement was in the business of buying and selling policies and that it may be selling the Collins Policy to somebody else.   (Exh. 1, 7/19/19 James Depo. at 67.)

9.

**Defendants' Fact:**   The JSSI Purchase Agreement contains a contractual statute of limitations that states, "No party may bring a claim or action, regardless of form, arising out of or related to the Agreement more than one year after the cause of action accrues."   (James Depo. at Ex. E, pp. 83:11-24, and Ex. F, § 10.)

**Response:**   The agreement entitled "Policy Purchase Agreement" between James Settlement and Collins Missouri, LLC contains the language quoted by

5

Defendants.  However, none of Defendants are parties to this agreement, and James Settlement disputes that it has any application to its claims.

10.

**Defendants' Fact:**   The principal of JSSI – Ron James – held close to 20 years of experience in the life settlements industry at the time of this transaction and maintains that he has "expertise in buying life settlements." (James Depo. at Ex. E, pp. 13:7-9, 37:21-23, 36:23-25.)

**Response:**   Not disputed.

11.

**Defendants' Fact:**   James referred to himself out as "the founder of the life settlement industry." (McDermott Depo. at Ex. G, pp. 65:10-22.)

**Response:**   James Settlement does not dispute that Mike McDermott said that "James Settlement Services held themselves out to me as Ron James being basically the founder of the life settlement industry." (Exh. C, 8/20/19 McDermott Depo. at 65.)  James Settlement, however, objects to this statement on the grounds that it is not material.

12.

**Defendants' Fact:**   James and Houchins III did not conduct business together regularly.  (James Depo. at Ex. E, pp. 64:2-66:16.)

**Response:**   Not disputed.

13.

**Defendants' Fact:**   JSSI's due diligence consisted of a conversation on the phone with the broker.  (James Depo. at Ex. E, pp. 124:20-125:9.)

**Response:**  Disputed. Prior to purchasing the policy, James Settlement reviewed the policy and documents provided by Houchins, III.  (Exh. 1, 7/19/19 James Depo. at 138.)   As James testified:

> A.   We reviewed everything, the life – every package -- when we got a package, a policy package, we reviewed everything. The policy package would have the policy, with the application in the back. It would have the life expectancies, the premium illustrations, the authorization forms, and all of that was reviewed.
>
> Q.   Do you know if you reviewed that information in connection with the purchase of the Collins's policy?
>
> A.   Yes. We certainly did. We looked at the application. And as I testified earlier, the application had questions in there, is this a STOLI, is this a premium financed policy, and neither one of them was marked yes.

(*Id.*)

James also asked Houchins, III if the policy was a STOLI/manufactured policy, involved premium finance (an indication of a risky policy), was a beneficial interest policy (another indication of a risky policy), or was contestable.  Houchins, III answered "no" to all these questions.  If he had answered "yes" to any of the

7

questions, James Settlement would have rejected the policy.   Based on the documents and representations made by Houchins, III, BLF, and BLC, James Settlement decided to purchase the Collins Policy.   (Exh. 1, 7/19/19 James Depo. at 23-33.)

14.

**Defendants' Fact:**   However, JSSI does not have specific recollections of all the conversations it had surrounding the purchase of the Collins Policy. (James Depo. at Ex. E, pp. 122:4-25.)

**Response:**   James Settlement does not dispute that Ron James ("James") testified that he does not have specific recollections of every conversation he had related to the purchase of the Collins Policy.  However, the fact is irrelevant; James testified unequivocally that he asked Houchins, III the due diligence questions. (Exh. 1, 7/19/19 James Depo. at 23-33.)   Moreover, Houchins, III and BLF provided documents to James Settlement related to the Collins Policy, including a copy of the policy and a form providing information about the policy.  (Exh. 3, 10/17/19 James Depo. at 337-38; Exh. 2, Houchins, III Depo. at 297-300; Exh. 6, Corporate Defendants' Depo. at 212-216, 220, Exhs. 50, 52; Answer [Doc. No. 9] at 11 ¶ 30.)  The information form provided to James Settlement falsely stated the policy never involved premium finance.  (Exh. 6, Corporate Defendants' Depo. at

8

212-216, Exh. 50.)   The copy of the policy provided by Houchins, III to James Settlement was not a true and correct copy of the Collins Policy.   (Exh. 6, Corporate Defendants' Depo. at 220, Exh. 52.)   The application attached to the copy of the policy Houchins, III provided to James Settlement falsely stated that the owner of the policy at the time the policy was issued was the 2007 Trust.  (Exh. 6, Corporate Defendants' Depo. at 31, 220, Exhs. 4, 52 (James 0013250).)  Based on the documents and representations made by Houchins, III, BLF, and BLC, James Settlement decided to purchase the Collins Policy.   (Exh. 1, 7/19/19 James Depo. at 23-33.)

15.

**Defendants' Fact:**   JSSI could have and was not prevented from obtaining additional information regarding the Collins Policy and related history, but JSSI did not seek further information. (James Depo. at Ex. E, pp. 211:7-212:21, 256:12-18, 278:117.)

**Response:**   Disputed. The evidence establishes that Houchins, III provided false information to James Settlement and concealed the STOLI scheme. (E.g., Exh. 6, Corporate Defendants' Depo. at 220, Exh. 52.)   After Sun Life refused to pay the death benefit, Houchins, III told James Settlement that there were no issues with the Collins Policy.   For example, Houchins, III sent an email to James

9

Settlement where he falsely represented that Sun Life "won't have a leg to stand on."   (Exh. 6, Corporate Defendants' Depo. at 125, 232-34, 237-38; Exh. 2, Houchins, III Depo. at 315-316, Exh. 40.)   Any suggestion that James Settlement could have obtained complete and accurate information from Houchins, III or the other Defendants is baseless.

16.

**Defendants' Fact:**   JSSI sold the Collins Policy to Conestoga on April 31, 2013 for $638,000.00, as evidenced by the Policy Purchase Agreement executed by JSSI and Conestoga (the "JSSI-Conestoga Purchase Agreement").   (James Depo. at Ex. E, pp. 89:13-90:11, and Ex. H, at § 1.04.)

**Response:**   James Settlement does not dispute it sold the Collins Policy to Conestoga for $623,000.   (Exh. 5, 10/16/19 McDermott Depo. at 43, Exh. 8.)

17.

**Defendants' Fact:**   JSSI made in excess of $400,000.00 profit on the sale of the Collins Policy to Conestoga.   (James Depo. at Ex. E, pp. 161:8-19.)

**Response:**   James Settlement does not dispute it made a profit of over $400,000 but does dispute Defendants' assertion that it suffered no damages. Among other things, James Settlement was defrauded into paying $200,000 for a worthless policy and a $7000 broker commission to Houchins, III and BLF and has

significant exposure to Conestoga.

18.

**Defendants' Fact:**   The JSSI-Conestoga Purchase Agreement contains a merger clause that provides, "This written Agreement constitutes the entire agreement between the Parties hereto with respect to the subject matter hereof and supersedes any prior written or oral understanding between the Parties with respect to the subject matter hereof." (Ex. H, § 2.04.)

**Response:**   Not disputed.

19.

**Defendants' Fact:**   JSSI provided Conestoga with a complete file of information and documentation related to the Collins Policy prior to the sale. (McDermott Depo. at Ex. G, pp. 111:13-19 and Ex. I; James Depo. at Ex. E, pp. 72:2-12, 73:23-74:16.)

**Response:**   The citation to James' testimony does not support the statement that James Settlement "provided Conestoga with a complete file of information and documentation." James testified he provided Conestoga with a Policy Package. (Exh. 1, 7/19/19 James Depo. at. 72.)

Houchins, III designed and implemented through his companies a STOLI "program" whereby he would recruit elderly people to apply for and obtain life

11

insurance for the purpose of selling the policies via life settlements. (Exh. 2, Houchins, III Depo. at 53, 107-110, 116, 242, 249-50, 254-55, 257-58, 264, 268, 270, 341-42, 348-49, 353, 375-386, 393-96, Exhs. 3, 4, 7, 8, 16, 18, 21, 22, 24, 26, 28, 29, 45, 47, 48, 53, 54, 55, 56.) There were numerous material documents and information concealed by Defendants which were not part of the package, e.g., documents showing Houchins, III paid the initial premium, and documents showing that Houchins, III was soliciting offers to buy the policy prior to issuance. (*Id.*)

20.

**Defendants' Fact:** This file included, among other things, the Collins Policy, its application, a limited power of attorney for Collins, contact information for Collins, his doctors, and Houchins III, forms from the sale by Collins Missouri to JSSI, executed HIPPA [*sic*] authorization forms, authorization to provide a death certificate, agreement for insured's status notification, acknowledgement of the insured, and copies of Collins's photo identification and social security card. (McDermott Depo. at Ex. G, pp. 89:5-12, and Ex. I.[2])

---

[2] This exhibit is the file maintained by DeLeon & Washburn on Conestoga's behalf, which is included in its entirety for the benefit of the Court. In particular, it contains the Collins Policy and application that listed a Tennessee address for Collins (pp. 27, 127, 193) ; Tennessee addresses for Collins's doctors (pp. 31, 131, 197) showing the policy was not induced based on misrepresentations regarding

**Response:**  James Settlement does not dispute that the file contained the documents referenced, but does object to Defendants' characterizations and arguments contained in the related footnote (included below) which is not admissible evidence.

21.

**Defendants' Fact:**  Conestoga had access to the actual documents and information underlying the Collins Policy, and also the underlying sources of that information.  (McDermott Depo. at Ex. G, pp. 111:13-19.)

**Response:**  Disputed.  Neither Conestoga nor James Settlement had access

the Collins state of residence in Tennessee; the signed authorization to provide death certificate by Collins dated January 21, 2013 (pp. 156, 161, 264); a HIPPA [*sic*] compliant authorization to release medical information (pp. 260-61, 263); a limited power of attorney granted by Collins (p. 251); and a copy of Collins' Tennessee driver's license, Medicare card, and social security card (pp. 269-70) showing his residence and continued cooperation with the sale of the life insurance policy; an executed waiver of beneficiary by Maria Gordillo and proof of identification (pp. 248-49) providing information regarding Collins's trust; a physician's letter of competency dated January 22, 2013 from Collins's doctors (p. 250) showing he was of sound mind and under no constraint or undue influence; a signed information release by Darin Davis on behalf of Collins Missouri, LLC permitting Sun Life to release a copy of "forms, riders or amendments, illustrations, or verification of coverage of this policy, or any other information requested by [JSSI]" (p. 252) showing JSSI and Conestoga had the ability and authorization to request any documents or information from Sun Life; a contact information sheet signed by Collins listing Houchins Jr., Houchins III, and two of Collins's doctors (p. 253) providing sources of information for verification of trust and policy; a signed agreement for insured's status notification for the benefit of JSSI/Conestoga where Collins lists his Tennessee address; and contact information for Houchins Jr., and Houchins III (pp. 265-66).

to the documents and information which would have shown that the Collins Policy was a STOLI policy and revealed Defendants' illegal STOLI scheme. Houchins, III designed and implemented through his companies a STOLI "program" whereby he would recruit elderly people to apply for and obtain life insurance for the purpose of selling the policies via life settlements. (Exh. 2, Houchins, III Depo. at 53, 107-110, 116, 242, 249-50, 254-55, 257-58, 264, 268, 270, 341-42, 348-49, 353, 375-386, 393-96, Exhs. 3, 4, 7, 8, 16, 18, 21, 22, 24, 26, 28, 29, 45, 47, 48, 53, 54, 55, 56.) Defendants did not disclose their "program" or provide access to all related documents. Rather, Defendants provided false information to James Settlement. (Exh. 6, Corporate Defendants' Depo. at 212-216, 220, Exhs. 50, 52.)

22.

**Defendants' Fact:**   Conestoga did not ask questions or investigate the information related to the Collins Policy prior to its purchase or seek additional information or other documentation from any source prior to its purchase of the Collins Policy, even though it could have. (McDermott Depo. at Ex. G, pp. 92:21-93:6.)

**Response:** Disputed. Prior to purchasing the policy, Conestoga had discussions with James Settlement related to the policy.  (Exh. D, 10/16/19 McDermott Depo. at 62, 63,  Exh. 11.)

14

23.

**Defendants' Fact:**   Conestoga never communicated with any of the Defendants or received any representations from them.   (McDermott Depo. at Ex. G., pp. 89:16-90:2, 97:49, 107:22-25.)

**Response:**   Not disputed.

24.

**Defendants' Fact:**   Conestoga was not prevented from contacting Houchins or Sun Life to ask questions about the Collins Policy or its ownership; nor was Conestoga prevented from investigating and discovering additional facts. (McDermott Depo. at Ex. G, pp. 111:13-19.)

**Response:**   James Settlement does not dispute that Conestoga could have asked questions but disputes that it could have determined that Houchins, III designed and implemented through his companies a STOLI "program" whereby he would recruit elderly people to apply for and obtain life insurance for the purpose of selling the policies via life settlements.  (Exh. 2, Houchins, III Depo. at 53, 107-110, 116, 242, 249-50, 254-55, 257-58, 264, 268, 270, 341-42, 348-49, 353, 375-386, 393-96, Exhs. 3, 4, 7, 8, 16, 18, 21, 22, 24, 26, 28, 29, 45, 47, 48, 53, 54, 55, 56.)  Defendants did not disclose their "program" or provide access to all related documents.  Rather, Defendants provided false information to James Settlement

and concealed their misconduct.  (Exh. 6, Corporate Defendants' Depo. at 212-216, 220, Exhs. 50, 52.)

25.

**Defendants' Fact:**  Conestoga did not have specific recollections of all the conversations it had surrounding the purchase of the Collins Policy. (McDermott Depo. at Ex. G, 87:15-88:25, 115:1-12.)

**Response:**  James Settlement objects to the statement on the grounds it is not material.

26.

**Defendants' Fact:**  The sales of the Collins Policy to JSSI (as the fifth purchaser) and then to Conestoga (as the sixth purchaser) were tertiary market transactions since the policy had already been sold multiple times. (Wood Depo. at Ex. J, pp. 226:13-25.)

**Response:**  Not disputed but irrelevant and not material.

27.

**Defendants' Fact:**  Conestoga understood the risks related to STOLI policies. (McDermott Depo. at Ex. G, pp. 55:20-56:15; McDermott Depo. VOL II at Ex. K, pp. 205:5207:11; Ex. L, pp. 23, 28.)

**Response:**   Not disputed.

28.

**Defendants' Fact:**   Conestoga prepared and distributed a Private Placement Memorandum ("PPM") to provide to investors and potential investors who were considering purchasing fractional interests in the Collins Policy. (McDermott Depo. VOL II at Ex. K, pp. 196:3-9, and Ex. L.)

**Response:**   Not disputed.

29.

**Defendants' Fact:**   The PPM identified STOLI policies as a risk and does not represent or warrant that the policies purchased by Conestoga would not be STOLI policies. (McDermott Depo. VOL II at Ex. K; Ex. L, pp. 23, 28.)

**Response:**   Not disputed.

30.

**Defendants' Fact:**   Conestoga received over $1 million from investors for selling fractional interests in the Collins Policy. (McDermott Depo. at Ex. G, pp. 122:2-9.)

**Response:**   Not disputed.

31.

**Defendants' Fact:**   Erwin Collins died on June 19, 2014. (Complaint at

17

ECF #36, ¶46; Ex. I, p. 212.)

**Response:**   Not disputed.

32.

**Defendants' Fact:**     Sun Life sent a letter to Conestoga dated October 30, 2014 advising it had initiated an investigation into the Collins Policy ("Sun Life Letter"). (Ex. M, pp. 2-3.)

**Response:**   Not disputed.

33.

**Defendants' Fact:**     JSSI was aware and had a copy of the Sun Life Letter. (Ex. M, p. 1.)

**Response:**   Not disputed.

34.

**Defendants' Fact:**     Sun Life filed a lawsuit against Conestoga in the Eastern District of Tennessee on in a case styled *Sun Life Assurance Co. of Canada v. Conestoga Trust Services, LLC*, Case No. 3:14-cv-00539, on November 14, 2014 ("Sun Life Lawsuit") seeking a declaration that the Collins Policy was void *ab initio*. (Complaint at ECF #36, ¶ 50.)

**Response:**   Not disputed.

35.

**Defendants' Fact:**    Conestoga admits the only "new evidence" to support its now-contrary position in this case is the court's ruling in the Sun Life Lawsuit. (McDermott Depo. at Ex. G, pp. 108:11-109:5, 113:8-13.)

**Response:**  James Settlement does not dispute that Mike McDermott, Conestoga's representative, testified that the new information and evidence he had that there was not a valid insurable interest in the Collins Policy when issued was the ruling in the Sun Life case.

36.

**Defendants' Fact:**    JSSI has not paid any money to Conestoga in relation to the Collins Policy. (James Depo. at Ex E., pp. 162:5-9.)

**Response:**  Not disputed.

37.

**Defendants' Fact:**    There are no agreements between JSSI and Conestoga that require JSSI to pay any money to Conestoga in relation to the Collins Policy. (James Depo. at Ex. E, pp. 164:5-7.)

**Response:**  Not disputed.

38.

**Defendants' Fact:**    JSSI claims it has an "exposure" to Conestoga based on the transaction involving the Collins Policy. (James Depo. at Ex. E, pp. 243:4-

246:2.)

**Response:**   Not disputed.

39.

**Defendants' Fact:**   JSSI denies it owes any liability to Conestoga. (Answer at ECF 41, ¶¶ 94, 98; James Depo. at Ex. E, pp. 163:10-12.)

**Response:**   James Settlement does not dispute that it denies that it is liable on the claims asserted by Conestoga against it.

40.

**Defendants' Fact:**   Conestoga has not refunded any money to its investors nor been sued by any investors in relation to the Collins Policy. (McDermott Depo. at Ex. G, pp. 118:3-10.)

**Response:**   Not disputed.

 Respectfully submitted this 31st day of January, 2020.

>*/s/ Joseph C. Sharp, Esq.*
>Joseph C. Sharp
>GA. Bar No. 637965
>*jsharp@polsinelli.com*
>Matthew S. Knoop
>GA. Bar No. 140870
>*mknoop@polsinelli.com*
>POLSINELLI PC
>1201 West Peachtree Street, NW
>Suite 1100
>Atlanta, GA  30309
>Telephone:  404.253.6000

20

Fax:  404.253.6060

*Attorneys for Plaintiff James Settlement
Services International, LLC*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **JAMES SETTLEMENT SERVICES INTERNATIONAL, LLC,** | |
| **Plaintiff / Crossclaim Defendant,** | |
| **v.** | **CASE ACTION NO. 1:17-CV-04680-CAP** |
| **CONESTOGA TRUST SERVICES, LLC,** | |
| **Intervenor Plaintiff / Crossclaim Plaintiff,** | |
| **v.** | |
| **EUGENE E. HOUCHINS, III, EUGENE E. HOUCHINS, JR., BONDED LIFE FUND, LLC AND AMERICAN LIFE FUND CORP.,** | |
| **Defendants.** | |

## CERTIFICATION OF COMPLIANCE

I hereby certify that the foregoing **PLAINTIFF JAMES SETTLEMENT SERVICES INTERNATIONAL, LLC'S RESPONSES TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR AMENDED & CONSOLIDATED MOTION FOR SUMMARY JUDGMENT** has been prepared in Times New Roman, 14-point font, in conformance with Local Rule 5.1C.

*/s/ Joseph C. Sharp, Esq.*
Joseph C. Sharp, Esq.

22

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| **JAMES SETTLEMENT SERVICES INTERNATIONAL, LLC,** | |
| **Plaintiff / Crossclaim Defendant,** | **CASE ACTION NO.** |
| **v.** | **1:17-CV-04680-CAP** |
| **CONESTOGA TRUST SERVICES, LLC,** | |
| **Intervenor Plaintiff / Crossclaim Plaintiff,** | |
| **EUGENE E. HOUCHINS, III, EUGENE E. HOUCHINS, JR., BONDED LIFE FUND, LLC AND AMERICAN LIFE FUND CORP.,** | |
| **Defendants.** | |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing **PLAINTIFF JAMES SETTLEMENT SERVICES INTERNATIONAL, LLC'S RESPONSES TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR AMENDED & CONSOLIDATED MOTION FOR SUMMARY JUDGMENT** upon all counsel of record by depositing same in the United States Mail with adequate postage affixed thereon to:

| | |
|---|---|
| Joseph Wood | Elizabeth J. Campbell |
| jwood@hennefer-wood.com | ecampbell@lockelord.com |
| jhclaw@yahoo.com | LOCKE LORD LLP |

HENNEFER FINLEY & WOOD, LLP
275 Battery Street, Suite 200
San Francisco, CA  94111

Kimberly A. Worth, Esq.
kworth@thrasherworth.com
THRASHER WORTH LLC
Five Concourse Parkway
Suite 3200
Atlanta, Georgia 30328

3333 Piedmont Road NE
Terminus 200, Suite 1200
Atlanta, GA 30305

James Craig Orr, Jr.
jim@hop-law.com
HEYGOOD, ORR & PEARSON
6363 North State Highway 161
Suite 450
Irving, Texas 75038

Respectfully submitted this 31st day of January, 2020.

*/s/ Joseph C. Sharp, Esq.*
Joseph C. Sharp, Esq.